IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TRAVELCLICK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>VARIANT HOLDINGS, LLC, and<br>VARIANT, INC.,<br><br>Defendants. | Civil Action No. 12-cv-708 |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF**
**PATENT NONINFRINGEMENT AND INVALIDITY**

Plaintiff TravelClick, Inc. ("TravelClick"), for its First Amended Complaint against Defendants Variant Holdings, LLC, and Variant, Inc. (collectively, "Variant"), avers as follows:

**NATURE OF ACTION**

1. This is an action for declaratory judgment seeking declarations of noninfringement and invalidity under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. TravelClick brings this action against Variant seeking a declaratory judgment that United States Patent No. 7,624,044 ("the '044 Patent") is invalid and not infringed by the use, alone or in combination with other components or systems, of TravelClick's central reservations system.

**PARTIES**

2. Plaintiff TravelClick is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in New York, New York.

3. Upon information and belief, Defendant Variant Holdings, LLC, is a limited liability company organized and existing under the laws of the Federation of Saint Kitts and Nevis, having its principal place of business in Charlestown, Nevis.

4. Upon information and belief, Defendant Variant, Inc., is a corporation organized and existing under the laws of the State of Wisconsin, having its principal place of business in McFarland, Wisconsin.

**JURISDICTION AND VENUE**

5. These declaratory judgment claims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). An actual, substantial, and continuing justiciable controversy exists between TravelClick and Variant concerning the alleged infringement and validity of the ‘044 patent, requiring a declaration by this Court resolving the legal rights of the parties.

7. This Court has personal jurisdiction over Defendant Variant, Inc., because Variant, Inc., is incorporated and has its principal place of business in Wisconsin. Upon information and belief, Variant, Inc., conducts business licensing and patent enforcement from such place of business.

8. This Court has personal jurisdiction over Defendant Variant Holdings, LLC, because, upon information and belief, Variant Holdings, LLC, has purposefully availed itself of the privilege of doing business in this Judicial District, including entering into a business relationship with Variant, Inc., a Wisconsin corporation, for enforcement of the ‘044 patent, and

has sufficient minimum contacts with Wisconsin to render the exercise of jurisdiction over Variant Holdings, LLC, compatible with due process.

9. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## **BACKGROUND**

10. The ‘044 Patent, entitled “System for marketing goods and services utilizing computerized central and remote facilities,” issued on November 24, 2009. A true and correct copy of the ‘044 Patent is attached hereto as Exhibit A.

11. The ‘044 Patent identifies the inventor as Stephen Wren. Upon information and belief, Stephen Wren is the sole incorporator, director, and officer of Variant, Inc.

12. Upon information and belief, Variant Holdings, LLC, is the assignee of the ‘044 Patent and Variant, Inc., is the exclusive licensee of the ‘044 Patent.

13. Plaintiff TravelClick developed, owns, and licenses the iHotelier Central Reservations System platform (“iHotelier”) to its customers who, for example, own or manage hotels, *i.e.*, “hoteliers”, including Benchmark Hospitality International, Hotel Contessa, 1859 Historic Hotels, Ltd., South Shore Harbour Resort Conference Center & Spa, The Menger Hotel, The Crockett Hotel, Inn at the Waterpark, Inn of the Hills Resort and Conference Center, Y.O. Ranch Resort & Conference Center, Williamsburg Hospitality House, Fredericksburg Hospitality House, The Brown Hotel, and Overton Hotel and Conference Center (collectively, the “Accused Customers”).

14. iHotelier is a central reservations system (“CRS”). The iHotelier CRS works with TravelClick’s customers’ web-sites to allow potential hotel guests to, *inter alia*, search for,

reserve, and pay for hotel rooms via the Internet. By obtaining a license to iHotelier, TravelClick's customers can use iHotelier as the booking engine for their hotels. Such customers in Wisconsin include: The Madison Concourse Hotel (concoursehotel.com); The Pfister Hotel (thepfisterhotel.com); Brookfield Suites Hotel & Convention Center (brookfieldsuiteshotel.com); Country Springs Hotel (countryspringshotel.com); The American Club (americanclubresort.com/hotel/tac/tac_index.html); Grand Geneva Resort & Spa (grandgeneva.com); Timber Ridge Lodge & Waterpark (timberridgeresort.com); The Olympia Resort & Conference Center (olympiaresort.com); The Dahlmann Campus Inn (thecampusinn.com); Ambassador Hotel (ambassadormilwaukee.com); Inn on Woodlake (americanclubresort.com/hotel/inn/ inn_index.html); Tundra Lodge Resort (tundralodge.com); Ambassador Inn (ambassadorinnmilwaukee.com); Blue Harbor Resort (blueharborresort.com); Sundara Inn & Spa (sundaraspa.com); and Heartwood Conference Center and Retreat (heartwoodconferencecenter.com).

15. Between June and September 2011, Variant sued more than 85 entities, including at least 13 TravelClick customers, in three separate actions filed in the U.S. District Court for the Eastern District of Texas, Marshall Division: *Variant Holdings LLC and Variant, Inc. v. Z resorts LLC et al.* (Civil Action No. 2:11-cv-00290); *Variant Holdings LLC and Variant, Inc. v. Amerco et al.* (Civil Action No. 2:11-cv-00422); and *Variant Holdings LLC and Variant, Inc. v. Hilton Hotels Holdings LLC et al.* (Civil Action No. 2:11-cv-00427) (collectively, the "Texas Actions"). On August 17, 2012, the Eastern District of Texas consolidated the Texas Actions for all pretrial issues and designated Civil Action No. 2:11-cv-00290 as the lead case.

16. In the Texas Actions, Variant accuses various entities, including each of the Accused Customers, of infringing the '044 Patent by providing information about goods and services through the internet and/or engaging in electronic commerce.

17. On August 15, 2012, Variant served infringement contentions (Variant's "Contentions") on the defendants in the Texas Actions. Variant's Contentions included numerous screen-shots of TravelClick's iHotelier system and charts purporting to show that TravelClick's customers' websites using the iHotelier system allegedly infringe the asserted claims of the '044 Patent. In particular, Variant accuses the following websites of the Accused Customers: Hotel Contessa (thehotelcontessa.com); 1859 Historic Hotels, Ltd. (1859historichotels.com); South Shore Harbour Resort Conference Center & Spa (sshr.com); The Menger Hotel (mengerhotel.com); The Crockett Hotel (crocketthotel.com); Inn at the Waterpark (innatthewaterpark.com); Inn of the Hills Resort and Conference Center (innofthehills.com); Y.O. Ranch Resort & Conference Center (yoresort.com); Williamsburg Hospitality House (williamsburghosphouse.com); Fredericksburg Hospitality House (fredericksburghospitalityhouse.com); The Brown Hotel (brownhotel.com); and Overton Hotel and Conference Center (overtonhotel.com).

18. Variant's Contentions concerning Hotel Contessa are exemplary. Variant identified Hotel Contessa's use of TravelClick's iHotelier system as allegedly infringing the '044 Patent and included screen-shots of the iHotelier system that were allegedly accessed via Hotel Contessa's website(s). A true and correct copy of Variant's Contentions that relate to Hotel Contessa and/or iHotelier is attached as Exhibit B. These Contentions constitute allegations of

infringement against the use by TravelClick's customer Hotel Contessa of TravelClick's iHotelier system supplied by TravelClick to Hotel Contessa.

19. Variant relied on a screen-shot of Hotel Contessa's use of TravelClick's iHotelier system in its Contentions for every asserted claim of the '044 Patent. Exhibit B, pp. 5-7, 9-12, 16-18, 20, 23, 26, 29-32 (screen-shots and references to screen-shots). Although TravelClick is not identified by name in the Contentions, Variant's reliance upon features and functionality of the iHotelier system for each and every asserted claim of the '044 Patent, and its inclusion of screen-shots of the iHotelier system in the claim charts for each and every asserted claim of the '044 Patent, constitute either allegations of infringement against TravelClick or, at minimum, an actual, substantial, and immediate threat of infringement allegations against TravelClick.

20. Variant's Contentions concerning Hotel Contessa are representative of its Contentions against other TravelClick customers involved in the Texas Actions, including each of the Accused Customers. These additional Contentions constitute further allegations of infringement against the use by the Accused Customers of TravelClick's iHotelier system supplied by TravelClick to the Accused Customers. To the extent Variant asserts that iHotelier itself infringes or that all of TravelClick's iHotelier customers infringe the '044 Patent, the Contentions against the Accused Customers would be representative of Variant's infringement theories relating to other iHotelier customers, including those located in Wisconsin identified above in paragraph 14.

21. TravelClick supplies the iHotelier system to over 2,000 hotelier customers in the United States.

22. As a consequence of Variant's foregoing activities, an actual, substantial, and immediate controversy exists between TravelClick and Variant as to whether the claims of the '044 Patent asserted by Variant are valid and whether the use of TravelClick's iHotelier system infringes or has infringed, either directly or indirectly, any valid and enforceable claim of the '044 Patent for at least the reason that Variant initiated lawsuits against TravelClick's customers, including the Accused Customers, and specifically identified TravelClick's iHotelier system in connection with such infringement allegations.

**COUNT I**
**(Non-Infringement of the '044 Patent)**

23. TravelClick restates and incorporates by reference all foregoing paragraphs.

24. TravelClick's iHotelier system does not infringe and has not infringed, directly, jointly, contributorily, or by inducement, any valid and enforceable claim of the '044 Patent, either literally or under the doctrine of equivalents, willfully, or otherwise.

25. An actual, substantial, and immediate controversy exists between TravelClick and Variant as to whether TravelClick's iHotelier system infringes or has infringed any claim of the '044 Patent for at least the reason that Variant has initiated numerous lawsuits against other entities, including the Accused Customers, alleging infringement of the '044 Patent by, *inter alia*, the use of TravelClick's iHotelier system.

26. TravelClick is entitled to a judicial declaration pursuant to 28 U.S.C. §§ 2201 and 2202 and a Judgment that TravelClick's iHotelier system does not infringe, and has not infringed, any valid and enforceable claim of the '044 Patent.

**COUNT II**
**(Invalidity of the '044 Patent)**

27. TravelClick restates and incorporates by reference all foregoing paragraphs.

28. Each claim of the '044 Patent is invalid for failure to meet one or more of the conditions and requirements for patentability as set forth, *inter alia*, in 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 102, 103, and 112.

29. One or more claims of the '044 Patent are invalid because they are anticipated under 35 U.S.C. § 102 by at least the following prior art references:

- U.S. Patent No. 4,645,873 to Chomet, entitled "Transactional Telecommunication System," issued on February 24, 1987.
- U.S. Patent No. 4,734,858 to Shlafly, entitled "Data Terminals and System for Placing Orders," issued on March 29, 1988.
- Pamela Kane, "PRODIGY® MADE EASY" (October 1990).
- U.S. Patent No. 5,253,165 to Leiseca et al., entitled "Computerized Reservations and Scheduling System," issued on October 12, 1993.
- U.S. Patent No. 5,327,554 to Palazzi, III, et al., entitled "Interactive Terminal for the Access of Remote Database Information," issued on July 5, 1994.
- U.S. Patent No. 5,396,546 to Remillard, entitled "Apparatus and Method for Automatic and User Configurable Information Appliance," issued on March 7, 1995.

30. One or more claims of the '044 Patent are invalid because they are obvious under 35 U.S.C. § 103 in view of at least the prior art references listed in paragraph 29 and the following prior art references, either alone or in combination:

- Brad Schepp and Debra Schepp, "The Complete Guide to CompuServe" (1990).
- U.S. Patent No. 5,166,886 to Molnar et al., entitled "System to Demonstrate and Sell Computer Programs," issued on November 24, 1992.
- U.S. Patent No. 5,220,501 to Lawlor et al., entitled "Method and System for Remote Delivery of Retail Banking Services," issued June 15, 1993.

- U.S. Patent No. 5,490,251 to Clark et al., entitled "Method and Apparatus for Transmitting Data Over a Signalling Channel in a Digital Telecommunications Network," issued on February 6, 1996.

31. For example, U.S. Patent No. 5,327,554 (the "'554 patent") discloses every limitation of independent claim 2:

a. "a first computerized central communications facility" (Abstract; 1:24-31; 2:66-3:11; 3:25-44; 9:52-56; 9:61-10:4);

b. "adapted to be linked to a computerized remote facility and to a plurality of other computerized central communications facilities" (Abstract; 1:24-31; 3:25-44; 4:17-28; 9:52-56; 9:61-10:4);

c. with "information relating to goods or services stored in a database" (Abstract; 1:15-31; 3:25-44; 9:52-56; 9:61-10:4);

d. and a processor programmed to "receive from a customer located at said computerized remote facility a request to at least one of search, browse and access in said database at said first or other computerized central communications facility for information of interest" (1:27-31; 2:38-44; 3:25-44; 5:63-66; 10:16-35);

e. "enable said customer to at least one of search, browse and access said database for information of interest" (1:27-31; 2:38-44; 3:25-44; 5:63-66; 10:16-35);

f. and "transmit said information of interest from the database at said computerized central communications facility to said computerized remote communications facility" (2:38-44; 3:25-49; 4:17-28; 5:63-66; 6:18-28; 8:57-62; 8:63-9:2; 9:8-10; 10:16-48);

g. "wherein at least one of said computerized central communications facilities is adapted to provide to said customer at said computerized remote facility a list of

computerized central communications facilities permitting said customer to select and contact at least one other computerized central communications facility to request additional information relating to said goods or services" (1:17-21; 8:23-29; 9:61-10:4);

h. and "wherein said processor is further programmed to download software from said computerized central communications facility to said remote communications facility, said software adapted to present information of interest to said customer" (Abstract; 3:45-49; 4:29-35; 5:28-32; 6:28-31; 9:25-28, 41-51).

Therefore, claim 2 of the '044 patent is invalid as anticipated by at least the '554 patent.

32. As an additional example, U.S. Patent No. 5,253,165 (the "'165 patent") discloses every limitation of independent claim 14:

a. "a first computerized central communications facility" (Abstract; 2:3-6; Fig. 1a);

b. "adapted to be linked to a computerized remote facility and to a plurality of other computerized central communications facilities" (Abstract; 2:3-20, 65-67; Fig. 1);

c. with "information relating to goods or services stored in a database" (2:3-29, 65; 3:41-56; Fig. 1);

d. and a processor programmed to "receive from a customer located at said computerized remote facility a request to at least one of search, browse and access in said database at said first or other computerized central communications facility for information of interest" (1:63-2:2; 3:31-37; 6:25-65; 7:28-31; 7:55-8:42);

e. "enable said customer to at least one of search, browse and access said database for information of interest" (1:63-2:2; 3:31-37; 6:25-65; 7:28-31; 7:55-8:42);

f. and "transmit said information of interest from the database at said computerized central communications facility to said computerized remote communications facility" (1:63-2:2; 3:31-37; 6:25-65; 7:28-31; 7:55-8:42);

g. "wherein at least one of said computerized central communications facilities is adapted to provide said customer information regarding rentals." (Abstract; 2:3-20, 66-67; 3:2-10).

Therefore, claim 14 of the '044 patent is invalid as anticipated by at least the '165 patent.

33. One or more claims of the '044 Patent are invalid under 35 U.S.C. § 112 for indefiniteness and lack of written description or enablement.

34. For example, at least independent claim 1 of the '044 Patent includes the claim limitation "transmit said information of interest from the database at said computerized central communications facility to said computerized remote communications facility." However, the referenced "said computerized central communications facility" has no antecedent basis in the claim on which it can rely. Therefore, this limitation fails to distinctly claim the subject matter of the claimed invention and at least claim 1 is invalid as indefinite under 35 U.S.C. § 112(¶ 2).

35. Furthermore, "said computerized central communications facility" does not find sufficient support in the specification. As such, a person skilled in the art, at the time the '044 Patent application was filed, would not be able to discern with reasonable clarity the '044 Patent's claimed invention. Likewise, the specification does not enable a person skilled in the art to make or use the claimed invention. Therefore, at least claim 1 is also invalid as indefinite under 35 U.S.C. § 112(¶ 1).

36. An actual, substantial, and immediate controversy exists between TravelClick and Variant as to whether any claim of the '044 Patent is valid for at least the reason that Variant has initiated numerous lawsuits against other entities, including the Accused Customers, alleging infringement of the '044 Patent by, *inter alia*, the use of TravelClick's iHotelier system.

37. TravelClick is entitled to a judicial declaration pursuant to 28 U.S.C. §§ 2201 and 2202 and a Judgment that all claims of the '044 Patent are invalid.

## **PRAYER FOR RELIEF**

WHEREFORE, TravelClick respectfully requests that the Court enter a Judgment in its favor and against Variant:

a. Declaring that the use of TravelClick's iHotelier system does not infringe, and has not infringed, any valid and enforceable claim of the '044 Patent, either directly or indirectly;

b. Declaring that each and every claim of the '044 Patent is invalid under 35 U.S.C. § 101 et seq., including 35 U.S.C. §§ 102, 103, and 112;

c. Enjoining Variant, and its officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, from directly or indirectly asserting infringement against, or instituting any further action for infringement of the '044 Patent against, TravelClick, or any of its customers, affiliates, successors, assigns, representatives, agents, subsidiaries, and vendors;

d. Finding that this is an exceptional case under 35 U.S.C. § 285 and awarding to TravelClick the costs and expenses of this litigation, including reasonable attorneys' fees and disbursements; and

e. Awarding to TravelClick such other and further relief as the Court deems just and appropriate.

Dated: November 13, 2012

By: */s/ Jesse J. Jenner*

Jesse J. Jenner
*Admitted pro hac vice*
jesse.jenner@ropesgray.com
Michael P. Kahn
*Admitted pro hac vice*
michael.kahn@ropesgray.com
Todd M. Simpson
*Admitted pro hac vice*
todd.simpson@ropesgray.com
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

Kenneth B. Axe (Bar. No. 1004984)
BOARDMAN & CLARK LLP
One South Pinckney Street, Ste. 410
P.O. Box 927
Madison, WI 53701-0927
Telephone: (608) 286-7207
Facsimile: (608) 283-1709
Email: kaxe@boardmanclark.com

*Attorneys for Plaintiff*
*TravelClick, Inc.*